Good morning, Your Honors. May it please the Court, I'm Linda McClain and I'm here representing the relators in this False Claims Act case, Doris Modglin and Russ Milko, and I'd like to reserve, if I can, about five minutes for my rebuttal. This case is a case that primarily involves the implied certification theory of liability and therefore the decision from the Supreme Court last year in Universal Health Services versus U.S. ex rel. Escobar is directly relevant to this case. Are you not relying on the false claim portion or are you placing primary reliance on the implied certification? Well, the implied certification is an implied certification of compliance with the False Claims Act provisions, but we believe that the framework of the allegations in this case do fall within an implied certification framework generally. Well, what is the false statement that you're claiming? The Escobar analysis, that would probably make it clearer, but the implied false statement here is that, first of all, the general requirement for payment under Medicare provisions is the reasonable and necessary standard, and that's the statutory requirement for payment. That, in turn, includes elements that this Court held in the International Rehabilitative Sciences case includes, among others, critically, a component of safety and effectiveness. Safety and effectiveness can be established through one of two ways under Medicare standards. What we're alleging here is that the use of the devices that was involved in the claims that we're dealing with in the complaint fails to meet either one of those standards. Do you concede, though, that if NCD 150.2 covers devices, that that's the end of your argument? No, we do not. This really isn't about so much about whether or not the device is covered. Our position is that, notwithstanding the device being covered by that particular national coverage determination, the real issue here involves the claim itself. So it's not about coverage. It's about the individual Medicare beneficiary who is actually being treated with that particular device. And that's where that goes. Well, if the device is approved, then you get under the Medicare rules that there's an NCD covering it, and if it's approved, that you can be reimbursed. But the core question here, and this is where the Escobar framework really comes into play, the core issue here is the safety and effectiveness of that device when used for that particular person. And if it's not safe and effective according to some standard But doesn't the NCD resolve that question? There's been a determination by Medicare that those devices are safe and effective under that provision. Our position is that the NCD 150.2 relates in general to the technology itself. And yes, it talks in general about It talks about the devices, correct? Not the spinal pack and not the spinal logic. Is your argument that, yes, you're conceding that NCD 150.1 talks about this device and so, you know, to some extent the device has been approved, but it's not approved specifically for use in the cervical spine, and so without that specific authorization, the defendants need to go one step further to demonstrate that it was a safe and effective use? That's very close to what we're saying, Your Honor. I think it's slightly different than that, though, because we can't forget that one of the devices that is not part of this case, there are devices out there which are truly FDA-approved for application in the cervical region of the spine. So 150.2 essentially says But this also is approved as adjunct to spinal fusion surgery for patients at high risk, on and on. I'm sorry, but I'm I'm looking at the NCD here, and it is approved in connection or adjunct to spinal fusion surgery. Yes. The NCD 150.2 essentially leaves it open for devices to be It covers all aspects of the spine. It doesn't limit it to lumbar, correct? No, it does not. But that does not mean that safety and effectiveness is not also a critical requirement. That is our point. In addition to that, are you suggesting that we have to use some standard other than the standards approved by the government? No. No. The standards that we're relying upon are the standards that are articulated in the Medicare manuals, and the ones that actually this Court also talked about in the international rehab case, which go back all the way to 1977. It's the same standards of safety. It can either be something that's based upon authoritative evidence, which essentially requires in this circumstance dealing with these particular devices, clinical trials, or it can be approved as generally accepted as safe and effective for the purpose for which it's intended. And that is a more, a broader kind of safety standard that would then embrace off-label uses in general. But it must satisfy one or the other. And that's the key point. And that's, and I think if I could just discuss the ESCOBAR framework again. ESCOBAR requires that materiality. I mean, that's the important. ESCOBAR actually, I'm sorry, did I, I don't want to interrupt. No, but my question is how can it be a material false statement or a material implied false certification, if in fact a reasonable reading of 150.2 is that it's covered? How do you, how do you reach the materiality standard? Well, let me first talk about the falsity, because that's, that's the first thing that the, that the court addressed in ESCOBAR. The falsity issue is established by looking at what was represented in the, in the forms or the claims or the documents that were submitted versus what was omitted. Then the question becomes, is what was omitted something that creates a misleading half-truth? Well, what was omitted? What was omitted here is that the device, when used for these particular patients who have cervical rather than lumbar conditions, does not pass either one of the medical standards. But nothing on any of those forms required an identification of which part of the spine was to be used, correct? That's, that's correct. And that's exactly the point that ESCOBAR, that's exactly the point that the lower court, the district court governed the entire reasoning on. And that's precisely the point that ESCOBAR eliminates, because ESCOBAR says materiality is not supposed to be determined simply by saying, is it an express condition of payment? Can we find some express condition of use, which was a really good one for this case also, is that you could have a contract for guns, for example, and nowhere in the contract does it say the guns have to be able to shoot. But that would still be a material condition. And if the contractor who supplied the weaponry supplied guns that really didn't shoot, that would have been a material nondisclosure of a critical material fact. So that's the, the, the issue first is, is there falsity? Is there something that's in the forms or the representations that are made that creates an implied representation? What's the implied? And your argument is the implied representation is that it's safe and effective. Is that? The implied representation is that it meets not only the, the conditions set out in 150.2, but it meets all of the other requirements for Medicare. Why isn't 150 point, if it meets the conditions in 150.2, the end of the story? And why isn't your complaint with the way, what CMS has done as opposed to there being a false statement here? Well, the, the 150.2 simply does not address in any way safety and effectiveness. There is, however, the other national coverage determination which does address safety and effectiveness and addresses durable medical equipment specifically. And that national coverage determination, which is 280.1, specifically states that, and something which must be considered in a question of covering one of these, this kind of device, durable medical equipment, is whether or not it is safe and effective for the purpose for which it's used. But it also tells you to look to the, to see if there's an NCD that covers it. It tells you to do that as well. Yes. Correct? So if there's an NCD that covers it, then you don't repeat the safety and effectiveness standard, correct? Well, what we're arguing is that the NCDs, and this is not just what we're saying, this is what CMS says, NCDs have to be construed coherently and harmoniously. You can't pick and choose between the NCDs that are going to apply. Well, if 280.1 says go to the appropriate NCD and 150.2 is the appropriate NCD, then you're reading them together and there's no issue. It says more than that, however. What the NCD 280.1 contains two parts, actually. There's a second part that talks about safety and effectiveness. Yes. But that's when there's not an NCD that covers the device, correct? No, that's when there's not an NCD, that's when the device that's in question is not in the list that's contained in 280.1. That's different. If you read the language carefully, and that's the critical thing here, is that they say in the generic devices. So that's what's in 280.1. But it doesn't purport to cover every single device. It's a non-exhaustive list, correct? Not an exhaustive list, and it does deal with generic devices. These are not generic devices. So if it's not a generic device contained in that list, then the coverage determination must concern whether or not it is safe and effective for the purpose for which it is used. But again, if I could get to the Escobar framework a little bit more, I think that might provide some clarity, because the discussion here is very similar to what we had in the lower court. What Escobar really says is that if you have a falsity, a misleading half-truth, and again, the misleading half-truth here is that the representation that, because here are these devices, the forms have all been filled out, no unusual circumstances have been identified, even though there's a place to do that on the forms, on the claim form. And the KF signifier indicates that this is a Class 3 device which is subject to regulation by the FDA. Our position is that the very fact that that representation is there, that it says that this is an FDA-covered product, and the fact that Medicare itself says, with issues concerning safety and effectiveness, we rely upon the FDA and their findings of things that are approved uses. But they also, Medicare also permits off-label uses. I mean, you have the CMS decision of December of 3, which says that they will cover off-label uses. Absolutely. Absolutely. Indeed, it does. But when you are representing, when you are submitting a claim, it's our position that you are submitting a claim that says that not only is the device covered, but that it also meets the And it can do that, again, either way. In these circumstances, however, as a matter of factual allegations, we have alleged there is no basis for general acceptance. And that was the key thing that was left out of the Second Amendment complaint, but we brought into the Third Amendment complaint. And it is significant here, because once you push aside the idea that these devices have somehow been generally accepted as safe and effective for whether or not, with these two devices, the SpinalPak and the Spinalogic, have they been found to be safe and effective for this particular use? How do you prove SIENTER, though? That's a real problem here, in light of 150.2. How do you prove that this was a knowing false statement? Well, again, going back to the Escobar analysis, where the court says, it's not one question. There's not some little bright-line litmus test that can be applied everywhere. You have to look at several different factors. Is it related to a condition of payment? If so, is it perhaps related to a core concern of the program? Which safety and effectiveness is? Or is it a de minimis kind of violation? Or what has the government done in the past when these kinds of things have been absent? When you look at circumstances where Medicare has found devices or other medical products not to be safe and effective, what we're dealing with is something that, with the materiality question and the SIENTER question, it almost becomes the other part of the Escobar decision, talks about how materiality and SIENTER does not have to be shown by saying, you know, I knew that I had to do this in terms of, in order to comply with this, and it was spelled out. The guns example that the court used says that's a kind of situation where if you know that the government's not going to pay for guns that don't shoot, because the government has refused to pay for guns that don't shoot in the past, then you have actual knowledge of that material requirement, even though it's not spelled out anywhere in the contract. And even though there's an NCD that can be reasonably read as covering this use and approving this use? Well, the NCD can certainly be read to cover the devices in general, but that does not excuse the defendants from complying with every other requirement that has to be satisfied in order to make the claim reimbursable. And that's the key question. Is it required to make an individual claim involving a person who has that particular condition? Is it necessary for it to be safe and effective for that person, for that Medicare beneficiary? And we are arguing that, yes, indeed it does, that it really isn't any good to submit a claim for someone who has a cervical condition for which these devices have never been shown to be safe and effective under either standard, under Medicare, and say, well, it's okay because it's okay for lumbar. That doesn't make this claim reimbursable. So that's the distinction, is that it really goes back and ties into their knowledge about their own requirements. You're down to about 40 seconds, do you want to preserve? I would direct the Court then to the section that deals with the defendant's awareness of the PMA process. There's about 15 pages in the Third Amendment complaint that talks about their own awareness of how important that is for the safety and effectiveness of their devices. Thank you, counsel. Good morning, and may it please the Court. Jessica Ellsworth on behalf of the appellees. Judge Amand, starting with Scienter, which you raised, we note that the Would you move the microphone a little closer to you? Certainly, Your Honor. Let me say this. There are three basic problems with Relator's complaint that led them to be asserting a non-viable FCA theory. One is Scienter, as Judge Amand raised. One is the lack of falsity, and the third is a lack of materiality. Each of those provide a pathway to affirmance. Can I have you address that second one? The NDA is silent as to whether it's approved for use in the cervical area of the spine, right? It's silent. I'm sorry, what is silent? The NDA, 150.1. Oh, the National Coverage Determination? Right. The National Coverage Determination sets out a list of conditions for which CMS has made a binding and conclusive determination that these devices are covered. But it doesn't talk about cervical use. It talks about use as an adjunct to spinal fusion surgery for certain high-risk patients, and that is the covered use, as an adjunct for spinal fusion surgery. There's no question that all of the claims at issue were submitted for patients for whom this device had been prescribed as an adjunct for spinal fusion surgery. They all fall within the plain language of the NCD. The Relator's argument is that somehow the language used in that NCD should be read to have a narrower interpretation than it says, or there should be some implied suggestion that off-label uses of devices aren't covered. There's nothing in the language of NCD 150.2 that says that. So you're saying that because all the claims in this case were, in fact, adjunct to spinal fusion surgery, they're deemed to be safe and effective and reasonable and necessary for these patients? Yes, I am. And the reason I say that is because CMS has said repeatedly. It says it in the Federal Register notices that are cited in the complaint. It says it in the Medicare Program Integrity Manual. It says it in the National Coverage Determination Manual. When CMS issues an NCD, a National Coverage Determination, that is the agency's binding determination of what uses are considered to satisfy the NCD. In other words, the agency, when it issues the NCD, has already analyzed whatever it feels is necessary to analyze to convince itself or to be satisfied that these uses are ones that satisfy the necessary, reasonable and necessary statutory requirement for coverage. Does that mean it covers any device, then, that claims to be a stimulator? No, you would have to be an FDA-approved device. There are certain limitations on the types of devices that CMS can cover. One of them is that you have to be, if you're an FDA-approved device, you can be covered. Do you agree that the intended use of this was for cervical use and therefore that, at least as far as the FDA goes, there should have been supplemental approval for the device for cervical use? No, we disagree with that. There were no facts pled in the complaint that suggest that the intended use was for cervical. In fact, the district court was very careful when it granted them leave to amend. It was a very narrow grant of leave to amend. In their supplemental brief, after the motion to dismiss had already been briefed on the second amended complaint, after the court had already had a hearing, after the court requested supplemental briefing, for the first time, the relator suggested in their supplemental brief that there might have been promotion by sales reps that would have triggered this intended use regulation. And so the district court, in her discretion, granted them leave to amend to address that type of off-label promotion and whether that could have triggered a requirement to file a PMA supplement. The relators came in and said over and over to her at the hearing on the third amended complaint, we're not alleging off-label promotion. We don't believe that there was promotion that would have triggered that. Everything else the district court said was beyond the scope of the leave to amend, and the relators made clear here repeatedly that they aren't challenging the limited scope of leave to amend that they were granted. In addition, not only do the facts show, the facts as pledged show that there was no requirement to file a PMA supplement, but the PMA supplement regulation relates to FDA. There is nothing that suggests any link between that regulation and CMS's separate determination as a separate agency about whether to pay for these devices when they are used for covered uses. So for each of those reasons, the intended use regulation is really a tangent in this appeal. It's not something that has any impact on the ultimate conclusion that the court should reach. The materiality point is also, I think, an important one to understand because the relators failed to identify any way in which there was any material falsity in the claims that were submitted. The claim forms do not require anywhere an indication of whether it is an on-label or an off-label use. There is one code that applies, one HCPCS code. It's the specific coding that Medicare uses for all spinal non-invasive stimulators used as an adjunct to spinal fusion surgery. The questions that are on the Certificate of Medical Necessity don't ask anything about the region of the spine. The NCD itself doesn't identify anything about the region of the spine that matters. And that's important because CMS has broader discretion to cover uses beyond those that FDA has approved in its regulatory analysis as safe and effective. And in this case, CMS did make a decision to cover a broader array of uses when it made that national coverage determination included within it its determination of what is reasonable and necessary. I think relators are conflating an NCD and something called a coverage memorandum. You can see an example of one in the supplemental excerpts of record at page 32. And the coverage memorandum is where CMS spells out essentially its clinical analysis, why it has chosen to set the scope of its NCD where it has. And the relator's real beef seems to be that they don't know what CMS considered. And so they argue that CMS should have written an NCD more narrowly, should have looked for evidence that they can't find, should have done something differently. Those are all policy arguments about what CMS should have done. There's actually an administrative mechanism that someone can use if they want to ask CMS to reconsider the scope of an NCD and issue it in a narrower fashion. But those are all far, far afield from a false claims act case. And they would also, I think, underscore the lack of scienter that a defendant would have in knowing that somehow they couldn't take an NCD, a national coverage determination at its face value when they submit claims where everything on the face of the claim, everything on the face of the certificate of medical necessity, everything in the patient's medical records make clear that this is a use that falls within the scope of the NCD, that somehow they should know that that is an improperly and ineligible claim. So your opposing counsels argue that just because an NCD covers a particular device, it doesn't mean that you can just use it for anything at all because it's always cabined by the requirement that it be necessary and safe and effective. Am I understanding it correctly that your response is that in this case, because the use was squarely within what's already covered as defined and limited by the NCD, that's already a built-in determination of safe and necessary? That's correct, Your Honor. And I think you can see if you look at the Medicare Program Integrity Manual, Section 13.1.1, which is found in the NCD, it talks about national coverage determinations and says that they outline the conditions for which an item is considered to be covered under the necessary and reasonable statutory section. And it specifically says that a contractor, when an NCD uses words such as only if or never, and of course this NCD says these devices are covered only if or only for, I think is the exact language, that a contractor has no discretion to deviate from the NCD. And then again in that same section of the Medicare Program Integrity Manual, it talks about not confusing national coverage determinations with coverage decision memoranda, where CMS's analysis and clinical position is set out more thoroughly. So when there is an NCD that squarely covers a particular use of a device and a claim is submitted for that use of the device, there is simply nothing false, there is nothing materially false, and there is no planter on behalf of a manufacturer who submits a claim. Are these all non-invasive device opposing pads wired to an external power supply? I'm reading the definition that that's the device that we're talking about here. There is a general description at the beginning of NCD 150.2, and that general description, the language in that is the same language that has been used all along. The relators suggest in a footnote to their, halfway through their reply brief, that somehow these devices aren't covered by that language. That's the first time that we have heard an argument that these devices are not covered by this language. And in fact, their second amended complaint specifically made allegations about 150.2 being the relevant NCD. So I don't think there's any argument before this Court that these devices are somehow outside the scope of NCD 150.2. I'd just like to address Escobar for one brief moment to say that Escobar underscored that materiality is meant to be a demanding and rigorous standard, that it is properly addressed in a motion to dismiss, you can see that at footnote six, that materiality and scienter must be strictly enforced in order to cabin the False Claims Act from really reaching out to conduct that was not intended to be covered, and that relators have identified no material violation that was omitted in any way from the claims that were submitted in this case. If the Court has no further questions, we ask that you affirm. You have 20 seconds left, but we'll give you two minutes. Manage the time. The core issue here really is whether or not the entire issue of safety and effectiveness can be determined within 150.2, or whether as the Medicare manuals actually state, that you have to comply with the other applicable requirements, safety and effectiveness being the main one. The issue that we've been dealing with mostly here, we do not agree with the characterization of our case by opposing counsel certainly, the real issue that we're dealing with here is how do you assess materiality? You have to go outside the 150.2 and make it coherent with the safety and effectiveness of the third amendment complaint that deals with the specific devices we're talking about here. They're not all two little pads that are connected. The 150.2 is a generic description of all non-invasive devices. We're dealing here with two very specific devices which meet neither of the standards of safety and effectiveness that Medicare provides. But they do come within the terms of 150.2. You agree with that? Well, I think the point that we were making in that footnote was that the language of 150.2 is and was intended to be a broad addressing of the technology. Which covers their devices. Oh, absolutely. We're not debating that 150.2 covers the non-invasive devices. What we're debating is whether or not these devices, the spinal pack and the spinal logic, are safe and effective under Medicare's own standards. But they are devices that are covered. They are definitely non-invasive. Yes. Osteogenic stimulators. Yes. Yes. And if I have no further questions, Your Honor. Thank you, counsel. Thank you. Thank both of you for your arguments today. The case just argued will be submitted for decision.
judges: Thomas, Nguyen, Amon